UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:15-CR-088 JD |
| | ) | |
| HILDA LOPEZ-GALLEGOS | ) | |

**OPINION AND ORDER**

**I. Introduction and Background**

On December 7, 2015, this Court adjudged Hilda Lopez-Gallegos guilty on her plea of guilty to distributing methamphetamine in violation of 21 U.S.C. § 841(a)(1). [DE 19]. Ms. Lopez-Gallegos pled guilty to that charge in exchange for an agreement by the Government to dismiss the remaining count of the two-count indictment against her. [DE 13]. The plea agreement further contained a provision in which the Government agreed to recommend a sentence at the low end of the applicable Guidelines range and to not pursue a drug quantity above 241.7 grams:

> The government agrees to make a recommendation at sentencing at the **low-end** of the guideline range found to be applicable in this matter. The government also agrees not to seek relevant conduct with respect to drug weight beyond the two controlled purchases in September 2015 (119.7 grams September 12, 2015 and 122 grams September 26, 2015).

[DE 13 at 5]. The plea agreement also included a general reservation of the Government's right to provide the Court with information relevant to Ms. Lopez-Gallegos' sentencing:

> The defendant fully understands that the United States of America has reserved the right to tell the Sentencing Court the good things about her, and the bad things about her, and has reserved the right to fully inform the Court of the nature and extent of her offense(s) and her involvement in additional criminal matters.

[DE 13 at 5].

On April 21, 2016, this Court held a hearing with the intention of sentencing Ms. Lopez-Gallegos. At the start of that hearing, however, the Government informed the Court that it had

just received information that law enforcement had recovered a significant quantity of methamphetamine from Ms. Lopez-Gallegos' backyard. It then requested a continuance, which the Court granted. The Government subsequently filed two status reports, [DE 37, 39], in which it indicated that it would honor its commitment not to seek a drug quantity above 241.7 grams, though "suggest[ed] that it may be appropriate for the Pretrial Services Department to produce a new draft Presentence Investigation Report." [DE 39]. The defense filed a response opposing the issuance of a revised presentence report and arguing only that the facts do not support attributing the methamphetamine recovered from Ms. Lopez-Gallegos' property to her. [DE 41].

**II. Analysis**

Since plea agreements are contracts, their content and meaning are evaluated according to ordinary contract principles. *United States v. Salazar*, 453 F.3d 911, 913 (7th Cir. 2006). "It is well settled that the government must fulfill any promises it makes in exchange for a defendant's guilty plea." *Id*. at 914. In this case, the Government has suggested that it may be appropriate for Probation to prepare a revised presentence report in light of Ms. Lopez-Gallegos' potential involvement in drug activity not described in the original presentence report. For the reasons that follow, the Court declines that request as inconsistent with the Government's obligations under the plea agreement.

In exchange for Ms. Lopez-Gallegos' guilty plea, the Government expressly agreed "not to seek relevant conduct with respect to drug weight beyond" 241.7 grams and the two controlled purchases. [DE 13 at 5]. It must honor the substance of that agreement. *Salazar*, 453 F.3d at 914. While purporting to adhere to it, the Government simultaneously suggests that, based upon information it provides, a revised presentence report, "may be appropriate." [DE 39]. Such a request would permit the Government to provide evidence to Probation of Ms. Lopez-Gallegos'

2

alleged additional drug activity, likely resulting in an elevated drug quantity calculation. That would directly undercut the parties' agreed upon drug quantity term and thus violate the plea agreement.

The Government's continued technical adherence to the 241.7 gram quantity does not change this result. Regardless of the position the Government says it adopts, permitting it to take steps which are substantively adverse to a term in a plea agreement would "not serve the broader purposes behind plea agreements" such as fairness and efficiency. *Salazar*, 453 F.3d at 914; *accord United States v. Boatner*, 966 F.2d 1575, 1579 (11th Cir. 1992) (finding that the Government breached a plea agreement where it said it would "stick to its stipulation" but provided evidence of drug activity beyond what the parties agreed to, contrary to the defendant's reasonable expectations); *United States v. E.V.*, 500 F.3d 747, 754 (8th Cir. 2007) ("The enforcement of the [plea agreement provision] entails an obligation to refrain from introducing evidence to the contrary; that the prosecutor expressly disavowed [seeking a sentencing enhancement barred by that provision] does not negate this obligation."). The Government's adherence to a recommendation at the low end of the Guidelines likewise does not permit it to introduce evidence that would support a heightened drug quantity. Again, what the Government does as well as what it says is important. Introducing additional drug quantity evidence would amount to an inducement to the Court to make an increased drug quantity finding (and thus adopt an increased sentence) in direct contradiction to the stipulation the defendant bargained for.[1] That would be a breach of the plea agreement. *See id.*; *United States v. Lara*, 690 F.3d 1079,

---

[1] The Court notes that a drug quantity stipulation between the parties does not prevent the introduction of additional drug quantity evidence where that evidence is obtained at the impetus of Probation or the Court, rather than the Government. *See United States v. Waite*, 378 F. App'x 818, 821-22 (10th Cir. 2010) (finding no breach where the prosecutor did not provide or bolster drug quantity evidence in the presentence report that exceeded the parties' stipulation); *United States v. DeWitt*, 366 F.3d 667, 671 (8th Cir. 2004) ("there would have been no breach of the plea agreement if the district court had *directed* the government to present evidence that contradicted the stipulation").

3

1083 (8th Cir. 2012) (finding that the Government breached a plea agreement where it introduced evidence to defend the presentence report's drug quantity calculation, which exceeded the parties' drug quantity stipulation, though the Government stopped short of offering a specific sentencing recommendation[2]).

The plea agreement's general clause permitting the Government to inform the Court about the nature and extent of Ms. Lopez-Gallegos' offense and her involvement in additional criminal matters also does not change the Court's analysis. When a plea agreement contains both general "introduce evidence" provisions and a specific stipulation to drug quantity, the latter prevails. *Lara*, 690 F.3d at 1082; *see also DeWitt*, 366 F.3d at 670. This stems from the ordinary rule of contract interpretation that, where an agreement contains both general and specific provisions relating to the same subject, the specific provision controls. *DeWitt*, 366 F.3d at 670; *see also Medcom Holding Co. v. Baxter Travenol Labs., Inc.*, 984 F.2d 223, 227 (7th Cir. 1993) ("It is a well-settled principle of contract construction that where a contract contains both general and specific provisions relating to the same subject, the specific provision controls."). Indeed, to liberally construe the Government's boilerplate reservation of rights in the plea would allow the Government to skirt virtually any limiting term in a plea agreement with similar language. Moreover, even if the Court did not give effect to specific provisions over general ones, any ambiguity resulting from conflicting terms would be resolved in favor of the Defendant and thus require the Government to adhere to the agreed upon drug quantity term. *See United States v. O'Doherty*, 643 F.3d 209, 217 (7th Cir. 2011). Accordingly, the Court finds that the plea agreement requires the Government to refrain from taking any measures to undercut the drug quantity ceiling in the plea agreement, notwithstanding the Government's reservation of

---

[2] The record shows that the Government did not have a sentencing recommendation. *United States v. Lara*, 2:11-CR-20016 dkt. 52 at 31 (W.D. Ark. Jan. 12, 2012).

4

rights to present information to the Court.

Ultimately, in enforcing a plea agreement the Court must "look to what the parties reasonably understood to be the terms of the agreement" and give effect to those terms. *United States v. Vaval*, 404 F.3d 144, 152 (2d Cir. 2005). Here the parties clearly intended to limit the drug quantity ascribed to Ms. Lopez-Gallegos. While the Government may have come across information at the eleventh hour suggesting that it struck an imprudent bargain, that does not permit it to renege on its promise. As such, the Court will enforce the terms of the parties' agreement and thus forego revision of the presentence report.

### III. Conclusion

In light of the parties' plea agreement, and because the Court believes that submission of information regarding additional drug activity by the Government would constitute a breach of that agreement, the Court will not direct Probation to prepare a revised presentence report. Recognizing that neither party has had the opportunity to brief this specific issue, the Court will afford counsel ten days to make objection to this order. Upon objection the Court will schedule briefing. Absent objection, sentencing will proceed based on the original presentence report at a date to be set by the Court, affording the parties opportunity to revise their respective sentencing memorandums should they desire.

SO ORDERED.

ENTERED: June 10, 2016

/s/ JON E. DEGUILIO
Judge
United States District Court